## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **CLINTON SCHREUDERS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:23-CV-00420** |
| | § | |
| **JS PRODUCTS, INC. AND,** | § | |
| **TUTT TOOL SALES, LLC** | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, CLINTON SCHREUDERS, (hereinafter referred to as "Mr. Schreuders" or "Plaintiff") and files his First Amended Complaint complaining of JS Products, Inc. (hereinafter referred to as "JS Products") and Tutt Tool Sales, LLC (hereinafter referred to as "Tutt Tool"), and respectfully shows this Honorable Court as follows:

## I.    NATURE OF THE CASE

1.    This is a products liability case in which Mr. Schreuders suffered permanent eye damage when a drill bit manufactured by JS Products and sold by Tutt Tool exploded in Mr. Schreuders' face during normal use. When the drill bit shattered into numerous pieces, some the shrapnel went around the edge of Mr. Schreuders' safety glasses and lodged into his eye, which required multiple surgeries to repair. Defendant JS Products is liable for manufacturing a faulty product that caused injury. Defendant Tutt Tool is liable under *Texas Civil Practice and Remedies Code* §§82.003(4) & (5) as a nonmanufacturing seller that: 1) exercised substantial control over the instruction and warning of the product, who failed to provide adequate warning, which caused Plaintiff to become

1

injured; and 2) for making express factual representations about the product that turned out to be untrue, which caused Plaintiff to become injured.

## II.      PARTIES

2.      Plaintiff Clinton Schreuders is an individual who resides in Wood County, Texas.

3.      Defendant <u>JS Products, Inc.</u> is a foreign corporation organized under the laws of Nevada with its principal place of business in Nevada. It can be served through its registered agent and individual with authority to act: <u>Sierra Corporate Services – Las Vegas, Kelly Tobler, 2300 West Sahara Ave, Ste 1200, Las Vegas, NV, 89102</u>. Defendant JS Products, Inc., has been served in the underlying state court proceedings, but has not filed an answer in either the state court proceeding or this proceeding.

4.      Defendant <u>Tutt Tool Sales, LLC</u> has appeared and can be served through its attorney of record.

## III.      JURISDICTION & VENUE

5.      Defendant Tutt Tool removed this case from state court to federal district court under 28 U.S.C §§1332, 1441(a), 1446 asserting that there is complete diversity among Plaintiff and Defendants with an amount in controversy over $75,000. Plaintiff disputes that complete diversity exists because the Tutt Tool and Plaintiff are both residents and citizens of Texas. Plaintiff is filing a motion to remand concurrently with this Amended Complaint.

6.      Plaintiff asserts that venue is proper in the 4th Judicial District Court of Rusk County, Texas, because Rusk County is the county in which all of the events that gave rise to this suit occurred and because the 4th Judicial District Court is the court where this case was pending prior to removal.

## IV.    <u>FACTUAL BACKGROUND</u>

7.      On April 22, 2022, the Mac Tools cobalt drill bit that was manufactured by Defendant JS Products and sold by Defendant Tutt Tool exploded in Plaintiff's face while being used for the purpose Plaintiff informed Defendant. Some of the shrapnel from the drill bit made its way past the safety glasses that Plaintiff was wearing at the time and caused severe eye damage, resulting in multiple surgeries and permanent vision loss. An expert evaluation of the drill bit determined that the drill bit had factory defects both physically and in the chemical composition of the bit. As a result, the bit exploded without warning and caused Plaintiff's injuries.

8.      Plaintiff purchased the drill bit from Defendant Tutt Tool. Prior to purchasing, Plaintiff expressed the need for a drill bit that was capable of safely drilling into harder metals. Plaintiff and Tutt Tool salesmen had conversation about Plaintiff's needs for a specialized bit that was about to handle the work that Plaintiff intended to complete. Tutt Tool then made two key express representations, which turned out to be untrue. Specifically, the representative told Mr. Schreuders:

      a.  The metal drill bit had the structural integrity to withstand drilling into harder metals and bolts; however, it did not; and

      b.  That the drill bit was stronger than comparable drill bits due to the metal composition; however, the drill bit did not have the metal composition promised and was weaker than comparable drill bits.

Both of these representations were false. Had the representative told Mr. Schreuders the truth about the drill bits -- that they did not have the structural integrity to withstand drilling into harder metals and that the drill bit was actually weaker than comparable bits -- Mr. Schreuders would not have purchased the drill bits and would not have been injured.

9.     Defendant Tutt Tool also exercised substantial control over the content of a warning or instruction that accompanied the drill bit because of the in-depth conversation between Plaintiff and Tutt Tool regarding the intended use of the product. Tutt Tool failed to provide any warning or instruction, let alone adequate, with the product to ensure safety, despite knowing the specific intended use of the product. Had Tutt Tool provided a proper warning or instruction with the drill bit, Mr. Schreuders would not have been injured. Specifically, Mr. Schreuders told the representative that his intended purpose was to use the drill bit to drill into harder metals and bolts. Rather than provide a warning or instruction that this drill bit was not suitable for this use, the representative actually encouraged the use. Additionally, the representative failed to provide warning or instruction that regular safety glasses would not provide proper protection from the drill bit because the bit had a propensity to shatter into many small pieces at failure. Upon information and belief, drill bits are supposed to be designed to have a clean break into two pieces in the event of failure. Under these circumstances, standard eye protection adequately protects the user. Here, the bit shattered into many tiny pieces, which went around the standard eye protection and caused injury. Had the representative provided a proper warning or instruction on the drill bit, Mr. Schreuders would have been able to protect himself from the unique failure or chosen to not use the bit and avoided injury.

## V.     <u>CAUSES OF ACTION</u>

### *Strict Products Liability*

10.     Plaintiff incorporate the facts and allegations explained above as if fully set forth herein.

11.     Defendant JS Products is engaged in the business of assembling, manufacturing, testing, instructing, selling, distributing, and/or supplying drill bits and other products to the public, including the subject drill bit in this lawsuit.

4

12.    Defendant JS Products placed this drill bit in the stream on commerce without properly inspecting the drill bit for dangerous conditions and knew that the ultimate users were not capable of inspecting the drill bit for dangerous conditions on their own.

13.    Defendant JS Products also put this drill bit into the stream of commerce after knowingly using an improper metal mix, which made the drill bit more susceptible to failure.

14.    The drill bit was defective and unreasonably dangerous to the ultimate users when sold and distributed in the following ways:

  a.  It failed to operate, as an ordinary consumer would expect;

  b.  It was designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition that caused the drill bit exploded in Plaintiff's face;

  c.   It was designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition that the drill bit had factory defects in the form of grind marks and microfractures that weakened the drill bit and caused the catastrophic failure;

  d.  It was designed, manufactured, sold, and/or supplied in an unsafe, unreasonably dangerous and defective condition that the drill bit was made using an improper mix of metals, specifically, the carbon and cobalt levels were below minimum allowable levels.

15.    At the time of the subject incident, the subject drill bit was in substantially the same condition as when it was sold and distributed by Defendants.

16.    The subject drill bit was unreasonably dangerous to foreseeable end users, including Plaintiff.

17.     Defendant Tutt Tool is liable as a nonmanufacturing seller under *Texas Civil Practice and Remedies Code* §82.003(4) & (5).

18.     As a direct and proximate cause of the foregoing conduct of Defendant, Plaintiff sustained serious bodily injury.

## *DECEPTIVE TRADE PRACTICES ACT*

19.     Plaintiff incorporate the facts and allegations explained above as if fully set forth herein.

20.     Plaintiff is a "consumer" under the Texas Deceptive Trade Practices Act ("DTPA") because he bought or acquired goods or services.

21.     Defendants can be sued under the DTPA

22.     Defendants committed one or more of the following wrongful acts:

        a.   Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services,

        b.   Representing that goods or services that claim to have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities but do not;

        c.   Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are not; and

        d.   Breach of implied and express warranties described below

23.     Plaintiff relied on these false, misleading, or deceptive acts or practices to his detriment.

24.     Defendants committed these violations knowingly and intentionally.

25.     Defendants' actions were a producing cause of Plaintiff's injuries.

26.     Defendant Tutt Tool is liable as a nonmanufacturing seller under *Texas Civil Practice and Remedies Code* §82.003(4) & (5).

6

### BREACH OF EXPRESS WARRANTY

27.    Plaintiff incorporate the facts and allegations explained above as if fully set forth herein.

28.    Defendants are the designer, manufacturer, assembler, distributor and/or seller of the subject drill bit.

29.    Defendants sold the subject drill bit to Plaintiff.

30.    Defendants expressly warranted that its product was safe for ordinary use and for the particular use described above.

31.    Defendants' affirmations regarding the safety and structural integrity of its product formed a basis of the bargain for Plaintiff, without which the Plaintiff would not have purchased Defendants' product.

32.    The product did not conform to the Defendants' affirmations regarding the safety and structural integrity of its product.

33.    Defendant Tutt Tool is liable as a nonmanufacturing seller under *Texas Civil Practice and Remedies Code* §82.003(4) & (5).

34.    As a direct and proximate result of Defendant's breach of express warranties, Plaintiff sustained the injuries and losses described herein.

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

35.    Plaintiff incorporates the facts and allegations explained above as if fully set forth herein.

36.    Defendants are the designer, manufacturer, assembler, distributor, and/or seller of the subject drill bit.  Defendants sold the subject drill bit to Plaintiff.

37.    Defendants impliedly warranted that its product was merchantable, fit for the ordinary purpose for which it was sold or used, was of fair average quality so as to pass without objection in the trade, and conformed to Defendants' own affirmations regarding the drill bit integrity and overall fitness for use as a drill bit.

38.    Defendants breached its implied warranty of merchantability, as the product did not conform to the Defendants' affirmations regarding the features/structural integrity and overall safe condition of the product, the product was not fit for the ordinary purpose for which it was sold or used, and was not of fair average quality so as to pass without objection in the trade.

39.    Defendant Tutt Tool is liable as a nonmanufacturing seller under *Texas Civil Practice and Remedies Code* §82.003(4) & (5).

40.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff sustained the injuries and losses described herein.

### *BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE*

41.    Plaintiff incorporates the facts and allegations explained above as if fully set forth herein.

42.    Defendants are the designer, manufacturer, assembler, distributor, and/or seller of the drill bit.  Defendants sold the subject drill bit to Plaintiff.

43.    In selling its product to Plaintiff, Defendants, through its agents, servants, employees, and apparent agents acting within the scope of their employment, authority, or apparent authority, made representations and promotions concerning the particular purpose to which Plaintiff would put the product to use and knew or should have known of the particular purpose to which Plaintiff would put the product to use.  Defendants impliedly warranted that the product would be fit for such particular purpose.

44.    Defendant Tutt Tool is liable as a nonmanufacturing seller under *Texas Civil Practice and Remedies Code* §82.003(4) & (5).

45.    As a direct and proximate result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiff sustained the injuries and losses described herein.

### *NEGLIGENCE*

46.    Plaintiffs incorporates the facts and allegations explained above as if fully set forth herein.

47.    Defendants were negligent in developing, designing, manufacturing, testing, selling, warning, instructing, and/or marketing the subject drill bit.

48.    At all times material hereto, the drill bit was in use by Plaintiff for the foreseeable intended purpose for which it was developed, designed, manufactured, tested, sold, and/or marketed. Plaintiff was a foreseeable intended user of the drill bit.

49.    Defendants owed a duty to Plaintiff to use reasonable care in developing, designing, manufacturing, testing, selling, warning, instructing, and/or marketing a product free from defects in material or workmanship that was safe and functional for consumer use and did not pose a foreseeable risk of harm to consumers.  Defendants failed to exercise such reasonable care.

50.    Defendants owed a duty to Plaintiff to adequately warn of the dangers inherent in the use of the product it developed, designed, manufactured, tested, sold and/or marketed.  Defendants failed to adequately warn consumers of the dangers inherent in its product that is the subject of this suit.

51.    Plaintiff's damages are the direct and proximate result of the Defendants' negligence, as well as that of its agents, servants, employees, and apparent agents acting within and during the scope of their employment, authority, or apparent authority.  Plaintiff's damages are not due to any act or failure on the part of the Plaintiff.

52.    Defendants were negligent in one or more of the following respects:

    a.    Failing to take appropriate steps to ensure the drill bit would not spontaneously explode;

    b.    Marketing and selling the drill bit in an unsafe condition;

    c.    Failing to provide users of the drill bit with adequate instructions for its safe use;

    d.    Failing to provide users of the drill bit with adequate warning concerning its use;

e.      Failing to thoroughly and adequately test the drill bit to ensure that the drill bit would not spontaneous explode;

f.      Designing the drill bit in such a way that it is not apparent to the user that the drill bit would spontaneously explode;

g.      Failing to discover defects in, and the dangerous condition of, the drill bit;

h.      Failing to remedy the defects in, and the dangerous condition of, the drill bit;

i.      Failing to discover defects in, and dangerous inadequacies of, the instructions and warnings provided with the drill bit;

j.      Failing to properly test, evaluate, inspect, and assemble the drill bit;

k.      Failing to properly design, manufacture, and advertise the drill bit to ensure that it was no unreasonably dangerous;

l.      Failing to warn the public in general, and Plaintiff in particular, of the dangers presented by the use of Defendants' product;

m.      Failing to exercise due care and act with regard for the safety of those using its products;

n.      using an improper mix of metals in creating the drill bit; and

o.      Such other and further acts and/or omissions as may be shown by the evidence at the trial.

53.    Defendant Tutt Tool is liable as a nonmanufacturing seller under *Texas Civil Practice and Remedies Code* §82.003(4) & (5).

54.    Each of the above-listed acts and/or omissions, taken singularly or in combination, was a proximate cause of the Plaintiff's injuries and damages.  The above and foregoing acts and omissions of Defendants constitute negligence, which was the proximate cause of Plaintiff's resulting injuries and damages.  Nothing Plaintiff did or failed to do caused or contributed to cause the occurrence made the basis of this suit.

### *GROSS NEGLIGENCE*

55.    Defendants chose to use a substandard mix of metals, specifically, a deficient amount of cobalt and carbon, in drill bits it advertised as "cobalt" drill bits. As a result, the drill bits were more susceptible to catastrophic failure. Upon information and belief, Defendants did this for profits.  Defendants knew that using a substandard mix of metals would create a dangerous product, but proceeded anyway. The conduct of Defendants described herein constitutes gross negligence as defined in TEX. CIV. PRAC. & REM. CODE § 41.001(11)(A)–(B).  Defendants' negligent conduct was more than momentary thoughtlessness or inadvertence.  Rather, Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Decedent.  Defendants had actual, subjective awareness of the risk involved but nevertheless preceded in conscious indifference to the rights, safety, or welfare of customers such as Plaintiff.  Defendants' grossly negligent acts and omissions were a proximate cause of Plaintiff's injuries and damages.

56.    Defendant Tutt Tool is liable as a nonmanufacturing seller under *Texas Civil Practice and Remedies Code* §82.003(4) & (5).

### *RES IPSA LOQUITUR*

57.    Defendants are also negligent under the doctrine of *Res Ipsa Loquitur*.

58.    Defendants were under exclusive management and control of the subject drill bit in question during manufacturing and assembly.

59.    Plaintiff did not alter the subject drill bit in any way.

60.    Had Defendants used ordinary care in the manufacturing and assembly of the vehicle at issue, it would not have spontaneously exploded in Plaintiff's face.

61.    Defendant Tutt Tool is liable as a nonmanufacturing seller under *Texas Civil Practice and Remedies Code* §82.003(4) & (5).

11

## VI.    DAMAGES

62.    As a result of the injuries sustained by Plaintiff as a result of the collision that makes the basis of this suit, Plaintiff hereby sues for the following items of damage:

   a.  Physical pain and suffering the past;

   b.  Physical pain and suffering that Plaintiff will experience in the future;

   c.  Mental anguish suffered in the past;

   d.  Mental anguish Plaintiff will experience in the future;

   e.  Medical expenses incurred in the past;

   f.  Medical expenses the Plaintiff will incur in the future;

   g.  Physical impairment suffered in the past;

   h.  Physical impairment the Plaintiff will suffer in the future;

   i.  Disfigurement; and

   j.  Loss wages / loss of earning capacity in the past and future.

63.    By reason of the facts alleged in this petition, Plaintiff has been made to suffer and sustain at the hands of the Defendant damages within the jurisdictional requirements of this Court and in such an amount as evidence may show proper at the time of trial.

## VIII.   JURY DEMAND

64.    Plaintiff demands jury trial and has tendered the appropriate fee.

## VII.    RELIEF REQUESTED

65.    Plaintiff hereby adopts, incorporates, restates and re-alleges paragraphs 1 through 64, inclusive, with regard to all causes of action.

66.    For these reasons, Plaintiff prays for judgment against Defendants for the following:

   a.  Actual damages;

    b.   Exemplary damages;

    c.   Treble damages for knowing and intentional conduct under DTPA;

    d.   Attorney fees under DTPA;

    e.   Pre-judgment and post-judgment interest;

    f.   Costs of court;

    g.   Such other and further relief as the Court deems just and equitable.

Respectfully submitted,

By: */s/ Myles A. Lenz*
Ramez F. Shamieh
Louisiana State Bar No. 35558
Texas State Bar No. 24066683
New York State Bar No. 5280219
Myles A. Lenz
Texas State Bar No. 24092685
myles@shamiehlaw.com

**SHAMIEH LAW, PLLC**
1111 West Mockingbird Lane, Suite 1160
Dallas, Texas 75247
214.389.7333 telephone
214.389.7335 facsimile
**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

    I do hereby certify that on August 30, 2023, a true and correct copy of the above and foregoing document has been forwarded electronically to all counsel of record through CM/ECF.

*/s/ Myles A. Lenz*
Myles A. Lenz

14